Good morning, Your Honors, and may it please the Court, I'm Jeffrey Hawes, along with David Udall and Jacob Zuniga, students at the University of Arizona College of Law, under the supervision of Dr. Jordan Curtis, on behalf of the appellant, Verdauven, who we'd like to acknowledge is here in the courtroom today. Okay, and do you intend to split your argument among you, and tell me, just give us a little sort of a guidance as to how- Mr. Udall will deal with the other two issues, and we'd like to reserve three minutes for Mr. Zuniga's rebuttal. For what it's worth, I found that your brief was very well written, and reflects well upon your group. Thank you, we appreciate that. Well, this case, Your Honors, if I may, is about a woman who, after incurring $60,000 worth of student loan debt, was expelled from the university in violation of the university's own contractual provisions, nine credits shy of graduation, because of gender discrimination. And as to the breach of contract claim, under de novo review, the trial court erred in denying summary judgment as to that claim. And the reason for that is because the trial court failed to recognize Oregon contract law. It failed to recognize that the graduate student handbook in this case constituted a contract under the Tate versus North Pacific College case. It failed to recognize the Tate contract, and then it failed to interpret the contract, as it must do under Oregon law. Under Oregon law, it is the duty of the court, rather than a jury, to interpret the parties under the contract. And in so doing, it must determine whether there are ambiguities and resolve those ambiguities based on the extrinsic evidence of the party's intent and upon the appropriate maxims of contractual construction. And in this case, those appropriate maxims are that we look at the contract and determine that it gives meaning to all the provisions of the contract. We test the contract against the drafter, which in this case was George Washington University. Now, what specific provisions of the contract are you relying on? And if you can point me to where in the excerpts of record I can find the contract. You can find the contract, and I believe it's number 22 in our excerpt of the record, graduate student handbook on page 39, I believe. There's a provision there which lines out the manner in which the university may discipline a student for problems of ethics or skill in an internship. It's a three-step process. Point me to the language upon which you are relying. If I may, Your Honor. Please, yeah. On page 39. 38, I believe. 38, okay. I'm with you. Under the title ethics slash law. Yeah. No, I apologize. It was 39. Internship skills and ethical problems. There's a three-step process in here which delineates the manner in which the university may deal with skill ethics and skill problems in an internship. And that's the reason for Ms. Dobbin's dismissal in this case. It requires that first the student be informed by her supervisor at the university of the problems, a concrete plan of action created. And if that doesn't solve the issues, then there must be two members of the faculty, including the supervisor, who create a written plan of action for the student which the student signs. Finally. So I understand we have the procedures that are laid out in subsection A and subsection B, but then at the bottom there's a sentence that says ethical violations can result in immediate dismissal from internship and from the program. Does that mean that in certain cases where we have ethical violations, A and B don't apply? No, I don't think it does. I think that if we're using organ contract law, understanding that we have to read the contract so that no provision is rendered superfluous, then that last sentence gives the university the power to exercise its quasi-judicial function to discipline the student in whatever manner they see fit once they've gone through this three-step process to determine whether an ethical violation has occurred. But then what's the word immediate doing in that sentence? Well, immediately, because if you look at the other provisions in the contract where other provisions state that you can be immediately dismissed for these sorts of problems, if you read those, it states that we have to determine that there's an ethical violation first, and this three-step process is the process that George Fox University created in order to determine whether such a violation has occurred. The contract also allows the university to determine what manner it will discipline the student, and it reserves the right to immediately dismiss them. It can slow down their progress in the program, or it can suspend them. And so that's the quasi-judicial function that it retains. But it has to go through this three-step process first in order to determine whether an ethical violation has occurred and to give the student the opportunity to voice their opinion of the process. Well, you had a factual trial, and there was a focused factual issue that was the basis for the trial. Precisely what was that factual issue that was the subject of the trial? Well, there was no factual issue, and that's what we're contending here is that Ms. Dauven should have been granted summary judgment because She was given to the jury. A factual matter was given to the jury to resolve, right? And wasn't that whether or not she sort of voluntarily left the internship, if I have that correctly? Well, if we look at the stage in the litigation when Ms. Dauven submitted her motion for summary judgment, at that time, under the Matsushita Supreme Court case, the George Fox case. That's not what Judge Block is asking you. Please answer Judge Block's question. What was the trial all about? Well, the trial was about, after the motion for summary judgment, the university submitted another handbook, which they claimed might confuse the language in the contract. And the court allowed that to happen, but it's the court's duty to interpret the contract and give meaning to the response. So what was the factual issue that went to the jury? I want to make sure I have it down right. The factual issue was as to whether George Fox breached the contract, and then later in the litigation, George Fox claimed that Ms. Dauven breached the contract first. Right. Why is that not an appropriate factual issue to resolve this case if she breached the contract first? Because at that stage in the litigation, George Fox University had never even raised this affirmative defense. The only issue of fact that they raised was the perception of whether Ms. Dauven had an opportunity to voice her opinion of what happened in the internship. But that's immaterial to whether she – whether George Fox breached the contract or not. The trial court should have entered summary judgment for Ms. Dauven based on the answering brief, the answer of George Fox University, and the supporting declarations. There was no issue of material fact at that point in the litigation. And under the Banuelos case and the Wilson Arlington Company v. Prudential case, this Court may look back at a motion for summary judgment that was inappropriately denied based on misapplication of law, even after a trial on the facts. And the jury was never given an opportunity even to understand what the appropriate principles of Oregon contract law were in this case. Okay. Now, I want to make sure you've saved enough time for your co-counsel to make the argument. Certainly. We just ask that this Court reverse force with instructions to enter summary judgment for Ms. Dauven. And I'll turn the time over to Mr. Udall. Thank you. Good morning, Your Honors. May it please the Court. The district court erred for two further reasons in this case. First, it replaced the deliberate indifference requirement with actual notice under the Title IX jury instructions. And second, it erred in awarding costs in light of Stanley. Didn't she agree to actual notice as an appropriate charge? I thought the record, you know, says that it was understood that that was an appropriate charge. And are you changing your position now for purposes of this appeal? Your Honor, she did agree to the jury instructions. However, it's evident throughout the record that she was trusting that the district was looking out for her rights in that case. And under this Court, and also the lower court, has a duty to make sure that pro se litigants' merits of your claim do not fall on procedural technicalities. Here, because she was trusting the court, she was trusting that the court knew what the law was. She did agree to that. However, the court misstated the law. And under de novo review, actual notice should not have been submitted in there. Let me ask you this. I understand your argument, and there's a certain common-sense appeal to it. But do we have case law that says that the plain error doctrine does not apply in cases where a person is representing himself or herself and has then failed to make an objection? I don't know of any specific cases regarding the plain error doctrine as far as that goes, Your Honor. However, let me see. I think under Fireman's Fund, if there is a misstatement in the law in the jury instructions, the standard of review is de novo, and that ---- In that case, was there an objection to the instructions? The ordinary rule is plain error applies if there's no objection. Right. Yes, Your Honor, that's correct. And I guess we have two responses to that. First, we would suggest that because of her pro se status and her reliance on the court's application of the law, that de novo applies because it was a misstatement. And second, even under the plain error standard, we believe that because of her pro se status, it would be fundamentally unfair to her that she would have to ---- or, excuse me, that this would still be error because the court misstated the law. And as a pro se litigant, especially in her context, she would not be able to see the nuances that would apply to that. So why do you think actual notice applies here? It doesn't apply across the board. It seems to be relegated to institutional challenges. Actual notice under the Gebser standard only applies to individual claims. Here, Ms. Doven claimed two things. First, that individual professors discriminated against her on the basis of gender. And second, that GFU as an institution itself discriminated against her on the basis of gender. And under this Court's precedent, that does not require actual notice. That's just deliberate indifference. Well, how did the institution discriminate against her based upon her gender? I don't ---- I'm not clear about how that plays out. She alleged enough in her pro se complaint that that should have reached the jury. And the issue here is that because of the actual notice requirement, that claim did not reach the jury, and she didn't get a fair day in court based on that issue. You might have misstated. You said she alleged in her complaint. The issue, once you get to the jury, is she presented enough evidence to warrant that. She did, Your Honor, both in her complaint, but also at trial. She testified several times throughout the record. She also put on a witness that testified of GFU's gender discrimination as well. Now, second, the district court also erred in awarding costs in light of its duty. The district court did not issue a pro se.   And it was a matter of whether or not a pro se would render Stanley. Under Stanley, if a pro se or, excuse me, if a litigant in general would be rendered indigent, and that would cause or that would potentially show future civil rights litigation, a district court should not enter. But it doesn't apply to all indigents. How do you draw the line? The test in Stanley, and I think in its progeny, is whether it would render a pro se or, excuse me, a litigant indigent. And here she was already indigent. She was litigating in form of papyrus. I think the line doesn't necessarily need to be drawn here because she was already indigent. And she had on top of that $60,000 of student debt. This would be a situation that would show future civil rights litigation. Sorry, contention. I'll tell you, Kennedy, there's something in the record that bothers me. Tell me whether this is correct. It seems that she arguably could be a frequent filer, that she's had 20 other litigations that she's brought. She was able to finance all of those prior litigations. Am I reading this record incorrectly about that? No, Your Honor. That was put in the record. It was not part of the trial record. The appellants put that in. We would, for two things. First, we would ask this Court not to take notice of that because of that. But also, just because she litigated 20 times as a pro se litigant does not put her to the standard of an attorney who's taken the bar, who's gone to law school, and she should not be held to that standard. I see that I'm over time. If I may reserve the remainder of my time for rebuttal, if there are no further questions. No, absolutely you may. Now, I'll give you a little tip. Experienced lawyers watch the behavior of the presiding judge. And if you've watched carefully, you'll see that I'm a total patsy on running over time, so that even when people have totally used up their time, I give them time for rebuttal. You're nonetheless very wise to have saved that time. Okay. Let's hear from the other side. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Good afternoon, Your Honors. My name is Curtis Burns, and I'm representing George Fox University in this matter. I'm going to request that the Court respond. So you have a written procedure. Why didn't you follow it? Pardon me? You have a written procedure. You have this policy, this handbook, and it spells out what you have to do in order to dismiss it and turn whatever. But why didn't you follow it in this case? Your Honor, we did follow it. As a matter of fact, I would point out, you asked during the Ms. Dovin's attorney's argument what information was presented to the jury at trial with regard to the procedure. Indeed, having the benefit of preparing the trial exhibits for the attorney who argued the trial, all of the exhibits focused on the graduate school handbook, which was at issue here and is what the counsel for Ms. Dovin is relying on today. Specifically, that last section, it eliminates an ambiguity. It provides that, and I'm quoting, ethical violations can result in immediate dismissal from internship and from the program. Was that the factual issue presented to the jury, whether there was an ethical violation? Yes, Your Honor. A warranted immediate dismissal? Pardon me, Your Honor. Yes, it was. That was presented to the jury and it was presented through the testimony of Professor Jordan and I believe her name was Correa. Your Honor, you have to take a look at the step process that's been argued by Ms. Dovin and look at where the placement of that last provision is. Opposing counsel says that the words immediate negate the – they apply only if we've gone through the process. Logically, and under normal construction contract laws, we're not going to assume that. They follow after that step – that two-step process and provide the authority of the institution to immediately dismiss. Now, why would the – why would an institution have that? In this case, it's important to note that Ms. Dovin is doing an internship not in a sterile academic classroom environment. Ms. Dovin was doing an internship at a drug rehabilitation center which focused on serving the needs of criminals who were ordered to take rehabilitation – drug rehabilitation as part of their sentence. This – in this case, Ms. Dovin's performance was found to have had evidence substantial and serious ethical violations. Was there a specific interrogatory that the jury responded to on the verdict sheet or was it just a general verdict? Whether that's the case. Was there a specific question posed to the jury as a special interrogatory or were they just asked to read to the general verdict? Your Honor, I can't – if you were to ask me specifically what it stated, I can't provide that to you right now. I know that each of the allegations, including whether Ms. Dovin was proactively breached the contract in part by violating this ethical provision, were presented to the jury. That was presented to the jury, but there was just a general verdict that they rendered. They were not asked specific questions. The – I believe the jury responded that Ms. Dovin – that George Fox did not breach the contract. So it was just a general verdict. Yes, Your Honor. Well, there were different questions. Did the plaintiff prove by preponderance of the evidence that any GFU defendant unlawfully discriminated against her? No. Did plaintiff prove by preponderance of the evidence that any GFU defendant, in terms of the graduate student handbook, as plaintiff alleges? No. Did plaintiff prove by preponderance of the evidence that any GFU defendant breached the duty of good faith and fair dealing owing to the plaintiff? No. I guess that answers my question. It does so very accurately, Your Honor. What we need to do when we evaluate whether that provision is indeed part of the two-step process that Ms. Dovin now argues or, in and of itself, gives the ability to exercise judicial authority, we need to look at why it's there. As we've already said, Ms. Dovin is in an institution that's dealing with criminals, potentially serious problems arise. Applying Ms. Dovin's logic, if, for instance, an intern were to engage in serious criminal activity, perhaps a felony assault or rape or something of that nature, if what Ms. Dovin argues applies, then George Fox would be required to come up with an action plan in writing. And when this particular individual, let's say now a convicted felon, doesn't comply, then they can dismiss him. That logically does not make sense, particularly when an intern is going into an environment that could be potentially hostile, could present all kinds of potential perils. In addition, the handbook also provides, the same handbook that we're talking about with regard to Ms. Dovin, their claims now, that a breach of confidentiality is taken very seriously and can result in serious consequences, such as a dismissal from the program and university with no possibility of graduation. This issue was presented to the Court in the George Fox's motion for summary judgment last week. Let me change your focus a little bit, because your time is going to be running out shortly. The fact that what it was $3,000, which was assessed against her for costs, I don't think there was a lot of thought or focus on that. It just seemed to be sort of an automatic type of entry. Do you think that the Court should have reflected a little bit more on the issue of whether or not under the circumstances of this case it made somewhat of a more conducive judgment call as to whether or not costs were warranted here? Well, Your Honor, you jumped me right into a question from the get-go, and I didn't get a chance to give you what the issues I was going to address. And in reality, I'm addressing a breach of contract, and I'm going to address the second argument as to whether actual notice was required. I am not going to present evidence as to the question of costs. Instead, we're going to rely on the briefing. I believe that if the Court rules in our favor on the first two issues, in Ms. Dovin's favor on the first two issues, it becomes moot. We're willing, in that situation, we're willing to concede the cost issue. I'm sorry. Say that one more time. If the Court rules against George Fox in either of the two issues raised by Ms. Dovin in this motion, the third argument becomes moot. Yeah. If we prevail, we're willing to concede the cost issue. You are willing to concede. Yes. So you're willing to set aside the judgment you got with respect to costs, win or lose on the other issues. Is that what I just heard? Yes, Your Honor. We'll take that as a binding concession. Thank you. You're welcome, Your Honor. I have a question, though. I see in the brief, and I understand why you're saying it, when we're talking about plain error and what Ms. Dovin should or should not have understood with respect to the jury instruction, that Ms. Dovin has appeared pro se in fewer than 22 cases, and you've got an affidavit, or what purports to be an affidavit, filed for the first time in this Court. That's not our regular procedure. We do not take evidence. Are you aware of that? No, Your Honor. I wasn't. That affidavit, I believe, was actually filed in response to Ms. Dovin's request in objection to Ms. Dovin's request for costs initially. Wait a minute. I'm looking at SCR2. It says in the United States Court of Appeals for the Ninth Circuit, the date is January 7, 2013. It looks to me as though that was prepared in connection with the appeal. Initially, Your Honor, that same information was presented in objection to our costs bill. In the district court? In the district court, yes, Your Honor. And can you point to me in the excerpt where that is? I don't have that in front of me, no, Your Honor. But this was in the record. I guess I can look for it. Your Honor, yes. That's my statement to you. But procedurally, we do not take evidence.  So anything that purports to be an affidavit presented to us, I'm not going to look at. Fair enough, Your Honor. The question of whether she's appeared pro se 22 times, then, does not negate the other arguments that are raised. And that includes the fact that Ms. Dovin... Well, if it's in the record, it's in the record. Okay. And you're representing me that it's in the record. Yes, Your Honor. I'm representing that it's in the record. In addition, though, Your Honor, Ms. Dovin provided all of the briefing that her newly appointed attorneys are presenting to you today and relying on. She also survived two motion for summary judgment hearings brought by three different law firms on behalf of two institutions. Ms. Dovin's legal acuity is more than the average person in this case. In addition, when we're talking about her pro se status, it's important to note that the reliance of George, pardon me, the reliance of Ms. Dovin on the Brioni's case is somewhat misplaced. That case does not hold for the proposition that a pro se litigant is not held to the same rules of the court. What it holds for is the idea that excusable neglect can excuse performance. In that particular case, the claimant had, it was argued that a claimant's lack of response was due to a failure of communication. In this case, Your Honor, Ms. Dovin actually was asked eight separate times over the course of the trial whether she agreed to the jury instructions, whether she had any objection to them. Each of those times, at least eight, she either didn't respond or affirmatively accepted them. Now, counsel for Ms. Dovin in their reply brief has cited the record, specifically their reply brief footnote four, as incorrectly stating that Ms. Dovin did not affirmatively agree to the jury instructions. In reality, Ms. Dovin was specifically asked about the actual notice requirement and affirmatively responded that she understood it and accepted it and had no jury instruction, no objection to it. That can be found on the supplemental excerpt of record 33, line 10 through 15. Her response was, yes, I do, when asked if she understood that the requirement would put a burden on her to prove an awareness on the part of the defendants. Your Honor, one issue that I want to specifically address is the magistrate's denial of motion for summary judgment. First, that's only reviewable if the decision was based on a question of law. Under the standard of harmless error, FRCP 61, the defendant's claimant's case was a criminal case, and the question of whether the magistrate reached a right decision for the wrong reasons is moot, unless it affected a substantial right and caused prejudice to the claimant. In this case, Your Honor, the judge, the magistrate who made the denial of the motion for summary judgment, had ample basis to decide that there was a question of fact. He specifically ruled that he did not affirmatively decide that the student handbook was a contract, but his opinion stated that he assumed for the purpose of his opinion that it was. Then he determined that there was questions of fact as to whether surrounding the termination of Ms. Doven by George Fox. Your Honor, one possibility for that is the inclusion of the ethical violation clause, which we've already discussed. Another possibility is the issue that was raised in the second motion for summary judgment hearing, his findings at that point, that there was a question as to which of the two handbooks actually controlled. In addition, a factual question as to whether George Fox may have complied with the second handbook that was raised at the time is possibly controlling. Your Honor, the – another issue is George – counsel for George Fox – counsel for Ms. Doven is now arguing that Yogemin requires that a court interpret the contract and address the ambiguities. There's a distinction there. There is a street three-step process that's articulated in that case. However, the court does not in itself address the ambiguity unless there's no evidence that raises a factual question as to that ambiguity. The Yogemin case is unique in that it clearly articulated that there was no evidence – it was conceded by the parties that there was no evidence that would raise a question of fact. That issue was further illustrated in the case of Madison v. Western Oregon, 209, or at 380, 2006, and it noted that the Yogemin case actually confirmed the general rule that an ambiguity is reserved for the question of a trier of fact as long as there's evidence from which an individual could decide that. Thank you very much. Thank you, Your Honor. Your Honor.  I'd like to begin by quickly dispelling some confusion that is surrounding this case in the record. To begin with, I'd like to point out that at no point before the district court did George Fox ever indicate that Ms. Dalvin has litigated 22 times. The Court asked George Fox to indicate where in the record it was, and they couldn't do so. I'd like to then quickly because of the time. Are you telling me that in fact it is not in the trial court record? It is not. No, no, sir. You know, if that's true, you misrepresented to me what's in the record. Do you stand by your representation that it's actually in the trial court record? Your Honor, I don't understand that. I'm still not clear. Okay. Next, Your Honor, I'd like to quickly dispel some confusion that regards the Title IX jury instruction. Opposing counsel mentioned something during his statement to the Court, and he termed it legal acuity, and he said that Ms. Dalvin has a great amount of it. The fact of the matter is, Your Honor, Ms. Dalvin may have filed 22 lawsuits, but she's not a skilled litigant in civil rights litigation. She may not have understood what the difference between actual notice and deliberate indifference was. And for that point, this Court should go ahead and excuse the fact that Ms. Dalvin failed to object. The last point I'd like to bring up, Your Honor, because I see I am running out of time quickly, surrounds this Court's observation articulated by Judge Fletcher. And during opening argument, Judge Fletcher asked my colleague about a clause in the contract that's listed, I believe, at page 39 of our excerpt of record, document number 22. It reads, ethical violations can result in immediate dismissal from internship and from the program. The fact of the matter is, Your Honor, that creates substantial ambiguity in the contract. In fact, opposing counsel said that the – said that ambiguity exists. He says it eliminates any ambiguity. The problem therein, Your Honor, is that the district court never fulfilled its role under Oregon law to interpret the contract and to delineate the rights and obligations of the parties before ruling on the motion for summary judgment. Had the Court done so, it would never have – or it would have been forced to grant summary judgment in favor of Ms. Dalvin. In fact, at document 17 on our record, page 16, the magistrate's findings, the magistrate recognizes although George Fox has not provided much in the way of specific facts and dispute, I note that the record reflects different perceptions of the meeting that took place between Dalvin and the faculty members. Okay. Well, and I should probably – Well, if you'd like to sum up. Sorry. Because – because the district court judge recognized that there was ambiguity in the contract, he should have construed the contract and recognized that the factual disputes were not material. Okay. Thank you very much. The case is submitted. One last thing I'd like to say. We've had Professor Curtis and her Arizona students come before us. They've all done beautifully. You've done well today. Thank you very much. And I'd like to recognize, as Professor Curtis well knows, she's my former student. I'm very happy to see her here again. Okay. We're in adjournment.
judges: Block, Trott, Fletcher